# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| RODERICK ROBERSON, MICHAEL HUDSON, DYLON WHITE, CALEB SCHMITT, JUSTIN BERBERICH, CHRIS ULRICH, RON COLLINS, | )<br>)<br>)<br>) |
| Plaintiffs, | ) Case No. 4:22-cv-00358-RK<br>)<br>) |
| v. | )<br>) |
| THE KANSAS CITY SOUTHERN RAILWAY CO., | )<br>)<br>) |
| Defendant. | ) |

## ORDER

This class-action lawsuit seeks injunctive and monetary relief against the Kansas City Southern Railway Co. under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. Now before the Court is Plaintiffs' Motion for Temporary Restraining Order. (Doc. 3.) The motion is fully briefed (Docs. 4, 31, 37), and the Court heard oral argument on the motion on July 11, 2022. After careful review and consideration of the Motion for Temporary Restraining Order, all briefing and arguments of counsel, and the Complaint, record, and applicable law, the Motion for Temporary Restraining Order is **DENIED**.

### I. Background

Plaintiffs are current or former employees of the Kansas City Southern Railway Co. ("KCS"), a Class I railroad. (Doc. 1 at ¶¶ 25-31, 32.) As a large freight rail operator, KCS operates twenty-four hours a day, 365 days a year. Plaintiffs are locomotive conductors and engineers and have, on average, worked for KCS for fifteen years. (Docs. 5 at ¶ 2; 6 at ¶ 2; 7 at ¶ 2; 8 at ¶ 2; 9 at ¶ 2; 10 at ¶ 2; 11 at ¶ 2; 12 at ¶ 2.)

To staff the railroad with its 24/7 needs, KCS locomotive conductors and engineers (like Plaintiffs) perform work on an on-call basis and may be called to work at any time day or night. To keep track of employees who are available to work, KCS uses a dual-classification system where its locomotive engineers and conductors are either designated as "marked up" (meaning the employee is available for on-call work as needed) or "marked off" (meaning the employee is on leave and is unavailable to be called for work). Employees who are marked up are placed on a

rotating on-call list. (Doc. 1 at ¶ 38.) As needed, KCS calls the employee residing at the top of the on-call list to report to work. (*Id.*) Employees have two hours to report to work once they are called. (*Id.*) Once the work is complete, the employee is added to the bottom of the on-call list and continues to move up the list until called into work once again. (*Id.*) In contrast, employees who "mark off" to take leave are removed from the on-call list.[1] To mark off, an employee calls a KCS crew management agent and tells the agent how long the employee needs to be marked off and the reason why. Employees mark off to take vacation days, sick and personal leave days,[2] as well as to take FMLA leave. When an employee marks up after having marked off to take leave (including FMLA leave) the employee is placed at the bottom of the on-call list. (Docs. 1 at 10, ¶ 19 & 15, ¶ 42; 12 at 3, ¶ 5.)[3] Generally, then, employees who are marked up are placed on the on-call list and move up the list until called in to work. Employees who are marked off do not reside on the on-call list and are placed at the bottom of the on-call list when they once again mark up.

When taking FMLA leave, Plaintiffs attest that KCS generally requires employees do so in 24-hour increments. Also according to Plaintiffs, though, KCS does allow employees to mark up before any period of FMLA leave for which an employee initially marks off for is over, even if it is ultimately up to KCS whether it will allow an employee to do so. (Docs. 9 at 3, ¶ 5; 10 at 3, ¶ 6; 12 at 3, ¶ 5.) Records of FMLA leave taken by various Plaintiffs as attached to their affidavits, however, show "mark offs" for FMLA leave in increments other than 24 hours and recorded in

---

[1] The only exception is for employees who are subject to a federally mandated rest period. These employees remain "marked up" and continue to reside on and move up the on-call list, although they will not be called in to work until the mandated rest period is over. (Doc. 1 at ¶ 44.)

[2] KCS does not provide a set number of sick or personal days for employees, although "excessive" leave may lead to discipline. (Docs. 5 at ¶ 5; 6 at ¶ 5; 7 at ¶ 5; 8 at ¶ 5; 9 at ¶ 5; 10 at ¶ 6; 11 at ¶ 5; 12 at ¶ 5); (*see also* Doc. 31-1 at ¶ 16 (noting KCS's attendance policy "reserves the right to investigate . . . any employee who appear[s] to be abusing their mark-off privileges")).

[3] KCS contends that whether an employee who marks up after having been marked off is placed at the bottom of the on-call list depends on the specific collective bargaining agreement that applies. KCS agrees that under at least some collective bargaining agreements, employees who mark up after having been marked off (including to take FMLA leave) are placed at the bottom of the on-call list. (Doc. 31-1 at 5, ¶ 14.) Under other collective bargaining agreements, KCS maintains, employees who do not miss their turn by marking off to take FMLA leave retain their spot on the on-call list and after they mark up "will get called to work at the same time as they would have had they not taken FMLA leave." (*Id.* at 5, ¶ 14.) For purposes of deciding Plaintiffs' motion for temporary restraining order, Plaintiffs attest that upon returning from FMLA leave they are placed at the bottom of the on-call list. KCS does not specifically contend otherwise.

2

minute-increments.[4]  Additionally, KCS submitted an affidavit by a supervisor of KCS's Crew Resource Management attesting that KCS does not require a minimum period of time for employees to take FMLA leave, that employees may tell a crew resources agent to mark them off to take FMLA leave for any period of time, and that employees can "mark up whenever they are ready to work." (Doc. 31-1 at 3-4, ¶ 10.)

Prior to September 2021, KCS did not track the amount FMLA leave taken by its employees. (Doc. 31-11 at 1, ¶ 2.) Instead, KCS tracked only whether employees' mark-offs for FMLA leave "were consistent with the frequency and duration estimated by their healthcare provider at the time they applied for FMLA leave." (Doc. 31-11 at 1, ¶ 2.) Around September 2021, however, KCS adopted a methodology to calculate its employees' FMLA leave entitlement and to track its employees' FMLA leave usage. (*Id.* at 2, ¶ 3.)

The FMLA entitles eligible employees[5] to "12 workweeks" of unpaid FMLA leave. § 2612(a)(1); *see* 29 C.F.R. § 825.200(a). An FMLA workweek is based on "[t]he actual workweek" of the employee or, in other words, "the specific hours the employee would have worked but for the use of leave." § 825.200(b)(1). When employees (like Plaintiffs) do not work a set schedule, the federal FMLA regulations explain that the FMLA leave entitlement for these employees is based on a "a weekly average of the hours scheduled over the 12 months prior to the beginning of the leave period (including any hours for which the employee took leave of any type)." § 825.205(b)(3).

To calculate employees' <u>FMLA leave entitlement</u> (i.e., the full amount of FMLA leave to which an employee is entitled), KCS relies on a 12-month rolling system. Specifically, KCS first determines the average number of hours the employee worked per week in the 12-month period preceding an employee's request for FMLA leave. (Doc. 31-11 at 2, ¶ 3.) KCS then multiplies this weekly work-hour-average by 12 (representing the 12 workweeks of FMLA leave to which

---

[4] Exhibits attached to affidavits submitted in support of Plaintiffs' motion for temporary restraining order show employees taking FMLA leave for both 24-hour increments as well as varying increments, for example: 16 hours and 7 minutes, 25 hours and 48 minutes, 11 hours and 29 minutes, 13 hours and 1 minute, 15 hours and 45 minutes (Doc. 6-4); 23 hours and 32 minutes, 71 hours and 10 minutes, 19 hours and 16 minutes (Doc. 8-3); 34 hours and 14 minutes, 13 hours and 25 minutes, 10 hours and 5 minutes, 12 hours and 29 minutes, 18 hours and 58 minutes (Doc. 9-1); 13 hours and 18 minutes, 38 hours and 2 minutes (Doc. 10-9)).

[5] There does not appear to be any dispute that Plaintiffs are (or were) eligible for leave under the FMLA. *See also* 29 U.S.C. § 2611(2)(A) & (B)(ii) (defining eligible employees under the FMLA).

employees are entitled under federal law). (*Id*.) KCS's FMLA leave entitlement methodology can be expressed as follows:

> **FMLA leave entitlement = [employee's average weekly work hours in prior 12 months] x 12**

To calculate an employee's <u>FMLA leave availability</u> (i.e., the amount of FMLA leave the employee has available to use, if any), KCS deducts from an employee's FMLA leave entitlement the total hours for which an employee "marks off" to take FMLA leave. (Doc. 31-11 at 2, ¶ 3.) KCS's FMLA leave availability methodology can be expressed as follows:

> **FMLA leave availability = [FMLA leave entitlement] – [hours marked off for FMLA leave]**

Starting in late 2021, Plaintiffs, who had each taken FMLA leave during the applicable 12-month rolling FMLA period, received notice from KCS that they had exhausted their FMLA leave entitlement. (Docs. 5 at ¶¶ 7-8; 6 at ¶¶ 7-8; 7 at ¶¶ 7-8; 8 at ¶¶ 7-8; 9 at ¶¶ 7-8; 10 at ¶¶ 8-9; 11 at ¶¶ 7-8.) Plaintiffs were told they had exhausted their FMLA leave entitlement despite not having taken more FMLA leave than they had in the past. (Docs. 6 at ¶ 8; 8 at ¶ 8; 9 at ¶ 8; 10 at ¶ 9; 11 at ¶ 8.) Because KCS has determined they have exhausted their FMLA leave entitlement, Plaintiffs have had to rely on sick and personal leave or have even had to go to work without taking any leave when they otherwise would have taken FMLA leave. (Docs. 5 at ¶10; 6 at ¶ 10; 7 at ¶ 10; 8 at ¶ 10; 9 at ¶ 10; 10 at ¶ 12; 11 at ¶ 19.) As a result, some Plaintiffs have been terminated following an investigation for "excessive layoffs" after taking sick or personal leave in place of FMLA leave (Docs. 5 at 3, ¶ 10; 7 at 4, ¶ 10); others have been investigated (but not terminated) or told they were close to being investigated for excessive leave usage (Docs. 6 at 4, ¶ 10; 8 at 4, ¶ 10); and still other Plaintiffs are fearful and anxious about having to take sick or personal days in place of FMLA leave in light of KCS's excessive-use leave policy (Doc. 9 at 4, ¶ 10; 10 at 5, ¶ 12; 11 at 3, ¶ 9).

In this class action lawsuit, Plaintiffs assert two claims against Defendant KCS under the FMLA. First, in Count One, Plaintiffs allege KCS's FMLA leave entitlement and FMLA leave

4

availability methodologies are unlawful. Specifically, Plaintiffs allege KCS's FMLA leave entitlement methodology violates federal law because KCS undercounts the hours employees have actually worked and fails to account for any leave an employee took in the relevant 12-month look back period. Additionally, Plaintiffs allege KCS's FMLA leave availability methodology violates federal law because KCS forces employees to mark off for FMLA leave in increments longer than one hour and improperly counts every hour the employee is marked off as an hour of FMLA leave. Second, in Count Two, Plaintiffs allege KCS unlawfully discriminates against employees who take FMLA leave by (1) requiring employees to take FMLA leave in increments larger than one hour, and (2) placing employees who return from FMLA leave at the bottom of the on-call list.

In addition to class certification, Plaintiffs seek monetary and injunctive or declaratory relief under the FMLA, including:

> (1) an order expunging discipline and disciplinary points relating to the use of FMLA leave or other leave that should have been protected FMLA leave; reinstating those Plaintiffs or class members who were terminated relating to FMLA leave or other leave that should have been protected FMLA leave, such that Plaintiffs and class members remain eligible for FMLA leave upon reinstatement; and promoting those Plaintiffs and class members who were not promoted as a result of the unlawful FMLA practices;
>
> (2) monetary damages including awards of back pay; wages, salary, employment benefits and compensation denied or lost; actual monetary losses; interest; and liquidated damages;
>
> (3) an award for costs, disbursements, interest, tax relief, and attorney's fees;
>
> (4) an order enjoining KCS from miscounting FMLA leave; interfering with, restraining, or discriminating against employees who use FMLA leave; or denying the use or attempted use of FMLA leave; and
>
> (5) an order declaring KCS's conduct to be in violation of the FMLA.

(*Id.* at 44-45.)

Plaintiffs' seek temporary injunctive relief that enjoins KCS from continuing to violate the FMLA and from terminating, disciplining, investigating, or taking adverse action against Plaintiffs and class members to the extent KCS's FMLA leave policy is unlawful. Specifically, Plaintiffs seek a temporary restraining order that:

5

(1) requires KCS to calculate employees' FMLA leave entitlement by the following methodology:

> FMLA leave = [average hours each employee worked per week during weeks when the employee was employed for the entire week and did not take any leave] x 12

(2) requires KCS to allow employees to take FMLA leave in increments of one hour or less;

(3) requires KCS to calculate employees' FMLA leave availability by deducting from employees' FMLA leave entitlement the difference in hours between (a) the amount of time the employee actually worked in the workweek in which the employee marked off for FMLA leave and (b) the average amount of time the employee works in a standard workweek, and prorating the difference if the employee took multiple forms of leave;

(4) requires KCS to return employees who mark up after having been marked off for FMLA leave to the same position in the on-call list as they held when they initially marked off for FMLA leave; and

(5) "restor[e] employees affected by KCS's unlawful conduct to their prior positions," including those that were disciplined, suspended, or terminated because they tried to take leave that should have been protected under the FMLA. (Doc. 4 at 55-60.)

## II. Legal Standard

"Temporary injunctive relief functions to 'preserve the status quo until, upon final hearing, a court may grant full, effective relief.'" *Simmons v. Butler*, No. 4:19CV10 HEA, 2019 WL 330464, at *1 (E.D. Mo. Jan. 25, 2019) (quoting *Kansas City S. Transp. Co., Inc. v. Teamsters Local Union # 41*, 126 F.3d 1059, 1065 (8th Cir. 1997)). Temporary restraining orders are "extraordinary and drastic remed[ies] and should not be granted unless plaintiffs clearly carry their burden of persuasion." *Morningside Church, Inc. v. Rutledge*, 471 F. Supp. 3d 921, 924 (W.D. Mo. 2020) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) and *Sanborn Mfg. Co., Inc. v. Campbell/Hausfeld Scott Fetzer Co.*, 997 F.2d 484, 485-96 (8th Cir. 1993)). The burden on a party moving for temporary injunctive relief is heightened when the relief requested "will give plaintiff substantially the relief it would obtain after a trial on the merits." *Dakota Indus., Inc. v. Ever Best Ltd.*, 944 F.2d 438, 440 (8th Cir. 1991) (citation omitted).

The Eighth Circuit applies the same standards to a request for a preliminary injunction and temporary restraining order. *See S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989) (affirming the district court's application of the *Dataphase* factors to a motion for a temporary restraining order); *Jackson v. Nat'l Football League*, 802 F. Supp. 226, 229 (D. Minn. 1992). In doing so, federal courts in the Eighth Circuit rely on the four *Dataphase* factors: (1) the likelihood that the movant will succeed on the merits; (2) the threat of irreparable harm to the movant; (3) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; and (4) the public interest. *Chevron U.S.A. v. 11500 Manager, LLC*, No. 09-6070-CV-SJ-HFS, 2009 WL 1974590, at *2 (W.D. Mo. July 7, 2009); *see Dataphase Sys. Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). The first and second factors (likelihood of success on the merits and threat of irreparable harm) are the most important factors because the lack of either is an independently sufficient ground to deny preliminary injunctive relief. *Adventist Health Sys./SunBelt, Inc. v. U.S. Dep't of Health & Human Servs.*, 17 F.4th 793, 801 & 806 (8th Cir. 2021); *see Sessler v. City of Davenport*, 990 F.3d 1150, 1156 (8th Cir. 2021) (movant's failure to demonstrate a sufficient irreparable harm "is an independently sufficient basis upon which to deny preliminary injunction") (citation and quotation marks omitted). At the same time, the critical inquiry is whether "on balance [the *Dataphase* factors] weigh towards granting the injunction." *Calvin Klein Cosmetics Corp. v Lenox Labs., Inc.*, 815 F.2d 500, 503 (8th Cir. 1987) (citation omitted); *see Dataphase*, 640 F.2d at 113 (the critical inquiry "is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined").

### III. Discussion

#### A. Likelihood of Success on the Merits

As the Eighth Circuit has recently explained, to satisfy this *Dataphase* factor, a movant need only show "it has at least a fair chance of prevailing" on the merits and need not show a "greater than fifty percent likelihood that it will prevail on the merits." *Progressive Technologies, Inc. v. Chaffin Holdings, Inc.*, 33 F.4th 481, 485 (8th Cir. 2022) (citations and quotation marks omitted); *accord Ponce v. Broker Sols., Inc.*, No. 6:20-03052-CV-RK, 2020 WL 1148589, at *1 (W.D. Mo. Mar. 9, 2020). Upon review of the complaint and the parties' briefing and affidavits, the Court finds Plaintiffs have demonstrated a fair chance of prevailing as to some of their claims.

7

The FMLA prohibits employers from interfering with, restraining, or denying the exercise of rights provided to employees under the FMLA. 29 U.S.C. § 2615(a)(1). Interference with FMLA benefits to which an employee is entitled includes miscalculating an employee's FMLA leave entitlement. *See Hernandez v. Bridgestone Ams. Tire Operations, LLC*, 831 F.3d 940, 948 (8th Cir. 2016). In addition, the Eighth Circuit recognizes a discrimination claim, likely also based under § 2615(a)(1), when an employer takes adverse action against an employee "because the employee exercises rights to which he is entitled under the FMLA." *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1006 (8th Cir. 2012).

KCS concedes the FMLA leave entitlement methodology it adopted in September of 2021 does not "count time on authorized leave towards an employee's FMLA entitlement," and has indicated that "going forward, KCS[] has decided to count approved leave towards an employee's FMLA entitlement." (Doc. 31 at 13 n.1.) The Court recognizes that claims for injunctive relief (like here) "may become moot if challenged conduct permanently ceases" such that "there is no reasonable expectation that the wrong will be repeated." *Comfort Lake Ass'n, Inc. v. Dresel Contracting, Inc.*, 138 F.3d 351, 354 (8th Cir. 1998) (citation and quotation marks omitted). Under such circumstances the defendant must satisfy the "heavy burden" to moot a case by voluntarily ceasing unlawful conduct. *Prowse v. Payne*, 984 F.3d 700, 702 & 703 (8th Cir. 2021) (citation and quotation marks omitted). For purposes of this factor, however, particularly in light of KCS's acknowledgment and apparent voluntary change to its FMLA policies, the Court finds Plaintiffs have demonstrated a fair chance of prevailing on this claim.[6]

The Court also finds Plaintiffs have demonstrated a fair chance of prevailing on the merits as to their claim challenging KCS's FMLA leave availability methodology to the extent KCS counts every hour of time marked off for FMLA leave as an hour of FMLA leave. Federal law generally requires that "only the amount of leave actually taken may be counted toward the employee's leave entitlement." § 825.205(b)(1); *see* 2612(b)(1) ("The taking of leave

---

[6] KCS argues Plaintiffs are unlikely to prevail on this claim, despite its apparent concession given its voluntary change to the railroad's FMLA policies, because FMLA-interference claims require actual harm (or prejudice) to the employees. (*See* Doc. 31 at 19 (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (1992); other citation omitted).) Specifically, KCS argues Plaintiffs do not allege such harm or prejudice because virtually all "Plaintiffs would still have exhausted their FMLA leave" even if approved leave had been included within their FMLA leave-entitlement calculation. (*Id.* at 20; *see* Doc. 31-14 at 1-2, ¶ 33.) As Plaintiffs point out in their response, however, this conclusion appears to presume KCS's methodology for calculating employees' FMLA leave availability is lawful, which is itself and independent claim in this action and appears to be the dominant dispute in this case.

8

intermittently . . . shall not result in a reduction in the total amount of leave to which the employee is entitled . . . beyond the amount of leave actually taken."). Moreover "[w]here an employee works a part-time schedule or variable hours, the amount of FMLA leave that an employee uses is determined on a pro rata or proportional basis." *Id.*

The regulations provide the following examples:

[I]f an employee who would otherwise work 40 hours a week takes off eight hours, the employee would use one-fifth (1/5) of a week of FMLA leave. Similarly, if a full-time employee who would otherwise work eight hour days works four-hour days under a reduced leave schedule, the employee would use one-half (1/2) week of FMLA leave. . . . If an employee who would otherwise work 30 hours per week, but works only 20 hours a week under a reduced leave schedule, the employee's 10 hours of leave would constitute one-third (1/3) of a week of FMLA leave for each week the employee works the reduced leave schedule.

Functionally, when an employee takes intermittent leave,[7] "the employer must calculate the amount of leave taken by comparing the number of hours or days the employee worked to the number of hours or days the employee was scheduled to work." *Scalia v. Dep't of Transp. & Pub. Facilities*, 985 F.3d 742, 750 (9th Cir. 2021); *see also Mellen v. Trustees of Boston Univ.*, 504 F.3d 21, 25 (1st Cir. 2007) (explaining § 825.205(a)'s provision that only the "amount of leave actually taken" may be counted against an employee's FMLA leave entitlement is intended "to ensure that an employer does not claim that an employee who takes off one day during a five-day work week has taken off the entire week, or that an employee who works half days under a reduced work schedule has taken off more than a half day). In other words, the amount of FMLA leave an employee takes on an intermittent basis is necessarily tied to the amount of work an employee missed by taking FMLA leave. *Cf.* § 825.205(c) (explaining overtime hours an employee are required to work are counted against an employee's FMLA leave entitlement while overtime hours that are only voluntary do not count against an employee's FMLA leave entitlement).

When Plaintiffs mark off to take FMLA leave, they are removed from the on-call list and are charged with using FMLA hours for each hour they remain marked off for FMLA leave. In other words, employees are not charged for the hours KCS would have had them work if they had not been on FMLA leave. By deducting every hour an employee is marked off to take FMLA leave without regard to whether the employee missed work by doing so, KCS charges employees

---

[7] In the context of the FMLA, intermittent leave means "FMLA leave taken in separate blocks of time due to a single qualifying reason." 29 C.F.R. § 825.202(a).

9

with more leave than is actually taken. Thus, KCS's FMLA leave availability methodology appears likely to violate the FMLA.[8]

Finally, the Court also finds Plaintiffs have shown a fair chance of prevailing on the merits of their claim that KCS unlawfully discriminates against employees who take FMLA leave by placing them at the bottom of the on-call list when they again mark up. In addition to the FMLA discrimination claim identified above, *see Pulzcinski*, 691 F.3d at 1006, the FMLA requires that employees who take FMLA leave (1) "be restored . . . to the position of employment held by the employee when the leave commenced," or (2) "be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a). The FMLA also provides that the taking of FMLA leave "shall not result in the loss of any employment benefit accrued prior to the date on which the leave commenced." § 2612(a)(2).

Implementing federal regulations provide:

(a) Equivalent position. An equivalent position is one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority.

. . .

(c) Equivalent pay.

(1) . . . An employee is entitled to be restored to a position with the same or equivalent pay premiums, such as shift differential. If an employee departed from a position averaging ten hours of overtime (and corresponding overtime pay) each week, an employee is ordinarily entitled to such a position on return from FMLA leave.

(2) Equivalent pay includes any bonus or payment, whether it is discretionary or non-discretionary, made to employees consistent with paragraph (c)(1) of this section. . . .

(d) Equivalent benefits. Benefits include all benefits provided or made available to employees by an employer, including group life insurance, health insurance, disability insurance, sick leave, annual leave, educational benefits, and pensions, regardless of whether such benefits are provided by a practice or written policy of

---

[8] In response, KCS argues that employees simply should not mark off to take FMLA leave when they are not at or near the top of the on-call list and are unlikely to be called in to work, and that employees need not mark off for 24+ hours. To be sure, KCS's somewhat unique on-call system to staff its railroad needs does not seem to cleanly fit within FMLA's basic framework. Nonetheless, it is KCS's responsibility to ensure compliance with FMLA-leave requirements and KCS, as the employer, may not interfere with employees' FMLA rights as Plaintiffs have alleged here.

10

an employer through an employee benefit plan as defined in Section 3(3) of the
Employment Retirement Income Security Act of 1974, 29 U.S.C. 1002(3).

> (1) At the end of an employee's FMLA leave, benefits must be resumed in
> the same manner and at the same levels as provided when the leave began[.]
> . . .
>
> (2) An employee may, but is not entitled to, accrue any additional benefits
> or seniority during unpaid FMLA leave. Benefits accrued at the time leave
> began, however, (e.g., paid vacation, sick or personal leave to the extent not
> substituted for FMLA leave) must be available to an employee upon return
> from leave.
>
> . . .

(e) Equivalent terms and conditions of employment. An equivalent position must
have substantially similar duties, conditions, responsibilities, privileges and status
as the employee's original position.

> . . .
>
> (2) The employee is ordinarily entitled to return to the same shift or the
> same or an equivalent work schedule.
>
> (3) The employee must have the same or an equivalent opportunity for
> bonuses, profit-sharing, and other similar discretionary and non-
> discretionary payments.
>
> . . .

29 C.F.R. 825.215(a), (c)-(e).

Initially, the first question is whether an employee's position on the on-call list at any given point in time is a "position of employment" or an employment benefit, as Plaintiffs argue it is. The regulations make clear a position of employment for purposes of FLMA restoration requirement concerns the employee's pay, benefits and working conditions, privileges, perquisites, and status. Other federal courts have broadly construed what is an employment benefit. *See, e.g.*, *Bailey v. Pretis Innovative Packaging, Inc.*, 600 F.3d 748, 751-52 (7th Cir. 2010) (finding little difficulty in concluding the employer's removal of absenteeism points is an employment benefit).

KCS relies on an opinion from the Third Circuit, *Dilario v. Manor*, 319 F. App'x 115 (3d Cir. 2009), to argue that Plaintiffs are unlikely to succeed on this claim. *Dilario* is easily distinguishable, however. In *Dilario*, the employee argued his employer violated the FMLA by placing him last in line to receive overtime work when he returned from taking FMLA leave. *Id.* at 118. The Third Circuit concluded the employee was ultimately "reinstated to the same position and was immediately put back into the overtime rotation, subject to [the employer]'s generally

applicable overtime policy," that ensured "employees had roughly equal opportunities to work overtime." *Id*. In doing so, the Third Circuit relied on § 825.215(c), requiring that employees have the same "average overtime opportunities" when returning from FMLA leave. *Id*. The court found as a factual matter the employee's opportunity for overtime hours was not in fact substantially reduced as a result of the employer's actions upon the employee's return from FMLA leave. *Id*. Rather than overtime pay, Plaintiffs' claim here directly implicates employees' regular pay. Moreover, *Dilario* turned on the factual question whether the employee actually had the same opportunity or not. To the extent an equivalent fact issue exists here, it would be improper to resolve it at this very early stage. Finally, compared to overtime, the FMLA and its implementing regulations require that on return from FMLA leave, an employee must be returned to a position "virtually identical" in terms of pay, benefits and working conditions, privileges, perquisites, and status. § 825.215(a).

To the extent the employee's position on the on-call list is an employment benefit, federal regulations require that employees returning from FMLA leave have the "same or an equivalent work schedule" and "the same or an equivalent opportunity for bonuses, profit-sharing, and other similar discretionary and non-discretionary payments" as the employee had prior to taking FMLA leave. When employees mark off to take FMLA leave, they have accrued a particular position on the on-call list while they were marked on. It seems there is a fair chance that under the FMLA and implementing regulations, employees like Plaintiffs are entitled to retain their position on the on-call list as they had accrued at the time they marked off to take FMLA leave. Plaintiffs do not argue here or in the complaint that KCS must keep employees on the on-call list, and moving these employees up the list, while they are marked off for FMLA leave. Nor does it appear that doing so would necessarily be required by the FMLA. *See* 2614(a)(3)(A) (the FMLA does not entitle employees to "the accrual of any seniority or employment benefit[] during any period of leave"). In sum, the Court finds Plaintiffs have demonstrated a fair chance of prevailing on the merits of this claim as well.

As to the remaining claims, however, the Court does not find Plaintiffs have shown a fair chance of prevailing. For example, while Plaintiffs claim that KCS undercounts average hours actually worked in the relevant preceding 12-month period in calculating employees' FMLA leave entitlement, Plaintiffs have supplied only a single affidavit in which one of the Plaintiffs attest only that the hours KCS reported in an email explaining the Plaintiff's FMLA leave entitlement

12

calculation was "artificially low" because he "typically work[s] at least 35 hours per week, and often many more." (Doc. 6 at 4, ¶ 9.) This falls short of supporting Plaintiffs' claim that KCS undercounts the hours its employees actually work. Similarly, Plaintiffs' claim that KCS crew management agents generally require employees to mark off for FMLA leave for at least 24 hours is largely belied by the record Plaintiffs submitted in support of their motion for a temporary restraining order. For instance, one affidavit submitted in support of Plaintiffs' motion for temporary restraining order attests that "KCS requires employees to use FMLA leave in 24-hour increments" (Doc. 7 at 3, ¶ 5), while the remaining affidavits suggest only that KCS requires employees to mark off for FMLA leave in 24-hour increments but may allow employees to mark back up before that 24-hour period is over. (Docs. 9 at 3, ¶ 5; 10 at 3, ¶ 6; 12 at 3, ¶ 5.) Additionally, some records show employees marked off for FMLA leave for increments recorded to-the-minute and not in 24-hour increments (e.g., 16 hours and 7 minutes, or 11 hours and 16 minutes). (*See supra* note 4.)

Finally, Plaintiffs' claim that KCS unlawfully discriminates against employees who take FMLA leave by requiring them to take FMLA leave in increments longer than one hour are similarly deficient. And even if it were true, it appears this claim (which alleges a substantive violation of the FMLA) postured in Count Two as a discrimination claim serves only to bootstrap and enhance their claim that KCS unlawfully discriminates by placing employees returning from FMLA leave on the bottom of the on-call list, as explained above.

In sum, the Court finds Plaintiffs have demonstrated a fair chance of prevailing on the merits of at least some of their claims.

### B. Threat of Irreparable Harm

Ultimately, the "burden [is] on [the movant] to establish the threat of irreparable injury." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). In doing so, the movant must show it has "no adequate remedy at law because its injuries [could not] be fully compensated through an award of damages." *Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, 920 F.3d 1181, 1183 (8th Cir. 2018) (citation and internal quotes omitted). To establish irreparable harm, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 425 (8th Cir. 1996). Additionally, rather than showing a "mere possibility" of irreparable harm, the "movant must show he is 'likely to suffer irreparable harm'" if the temporary restraining order is denied. *Sessler v.*

13

*City of Davenport*, 990 F.3d 1150, 1156 (8th Cir. 2021) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  While no single factor is determinative of whether to grant a temporary restraining order, "[f]ailure to show irreparable harm is an independently sufficient ground upon which to deny a temporary restraining order." *Simmons v. Butler*, No. 4:19CV10 HEA, 2019 WL 330464, at *1 (E.D. Mo. Jan. 25, 2019) (citing *Watkins v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

Plaintiffs acknowledge that lost wages – the primary harm from termination (or by extension, threatened termination) – does not generally support a finding of irreparable harm to entitle them to preliminary injunctive relief.  (Doc. 4 at 47 (citing *Adam-Mellang v. Apartment Search, Inc.*, 96 F.3d 297, 300 (8th Cir. 1996) (other citations omitted)); *see Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("[T]emporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury."); *see also O'Grady v. Veterans Admin.*, No. 11-3145 (PJS/AJB), 2012 U.S. Dist. LEXIS 34209, at *5-6 (D. Minn. Jan. 18, 2012) (applying *Sampson* to determine loss of salary due to termination is insufficient to establish irreparable harm).  When employers violate the FMLA, employees are entitled to damages or compensation and equitable relief including employment, reinstatement, and promotion.  *See* 29 U.S.C. § 2617(a)(1).  Thus, should Plaintiffs prevail on their claims, they will be both compensated (including for lost wages, employment benefits, and other compensation) and are entitled to equitable relief including reinstatement and employment.  *See Mann v. Haigh*, 891 F. Supp. 256, 264 (E.D.N.C. 1995) (finding no irreparable harm from loss of job, forfeiting accrued leave, emotional damage, and effects on plaintiff's health condition in FMLA case, recognizing "[t]he whole point of the FMLA . . . is to protect such benefits for eligible employees [such as reinstatement, restoration of back pay, etc.]; judicial enforcement of FMLA serves to avoid entirely the issue of 'irreparable' harm by redressing these damages and restoring a successful plaintiff to his *status quo ante*").

Nonetheless, Plaintiffs claim KCS's flawed and unlawful FMLA methodologies cause irreparable harm in two ways:  first, employees are chilled from taking sick or personal leave when they otherwise would have taken FMLA leave because doing so makes them susceptible to discipline or termination; and second, "every day that KCS employees are forced to work instead of taking time off is a day they can never have back," essentially causing pain and suffering from either being forced to work or not having the opportunity to care for "newborn children or sick

relatives, or tak[e] needed medical rest." (*Id.* at 46 & 47.) Neither is an adequate irreparable harm that entitles Plaintiffs to temporary injunctive relief in this case, however.

First, whether a chilling effect exists is "an issue of fact that the employee seeking a preliminary injunction must prove." *Adam-Mellang*, 96 F.3d at 301 (affirming denial of injunction when alleged chilling effect on other employees had no basis in the record). Plaintiffs argue that they have satisfied this standard here because "the record demonstrates a consistent pattern of discriminating against, investigating, and discharging employees who take FMLA leave to which they are entitled." (Doc. 4 at 50.) Plaintiffs' theory of irreparable harm because of a chilling effect appears to be twofold: (1) Plaintiffs and others are chilled from taking FMLA leave entirely, and (2) Plaintiffs and others are chilled from taking other available leave like sick and personal leave because of KCS's excessive-use-of-leave policy. The first theory, though, begs the question: to what specific hours of FMLA leave are Plaintiffs entitled (as to both entitlement/allotment and available balance)? This, of course, is the dominant contested issue in this case. KCS has determined, based on its FMLA methodologies, that Plaintiffs have exhausted their 12 workweeks of FMLA leave. Plaintiffs believe KCS's methodologies are flawed. In other words, that Plaintiffs (at this point) do not have FMLA leave available to take is the critical question in this case and does not itself demonstrate irreparable harm. *See also Burton v. S.D. Warren Co.*, No. 2:17-cv-00110-JDL, 2017 WL 8696533, at *2 (D. Me. May 19, 2017) (irreparable harm due to a chilling effect is based upon a showing the unlawful conduct "is likely to deter other employees from attempting to exercise their rights under the statute").

Likewise, as to the theory that Plaintiffs are chilled from taking other leave available to them, Plaintiffs have simply not shown that is the case. While some Plaintiffs have expressed concern about taking this other leave in light of the excessive-use policy, they have continued to do so, when necessary, particularly those with chronic health conditions like migraines and ulcerative colitis. (*See* Doc. 6 at 4, ¶ 10; 8 at 4, ¶ 10; 9 at 4, ¶ 10; 10 at 5, ¶ 12; 11 at 3, ¶ 9.) In addition, although Plaintiff Caleb Schmitt submitted a supplemental declaration in which he states he is now under investigation for taking sick leave and that on eight of the nine occasions giving rise to the investigation he took sick leave for "the condition for which KCS had approved me for FMLA leave" (Doc. 38 at ¶ 2), the fact remains that Plaintiff Schmitt took other leave available to him. And because termination is not an irreparable harm, the threat of termination does not somehow transform this harm to an irreparable harm.

15

Second, Plaintiffs allege the employees' pain and suffering from being forced to work and not having FMLA leave to which they are entitled (should they be successful) provides the requisite irreparable harm. This is not a harm for which the FMLA provides a remedy, however. *See* 29 U.S.C. § 2617(a). "When legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies." *Furrer v. Brown*, 62 F.3d 1092, 1096 (8th Cir. 1995) (citation and internal quotes omitted); *see also Substation K, Inc. v. Kansas City Power & Light Co.*, No. 4:19-cv-00031-SRB, 2019 WL 2411439, at *4 (W.D. Mo. June 7, 2019) (applying *Furrer* to exclude recovery of damages when statute at issue only provided for injunctive relief). Emotional distress damages are not recoverable under the FMLA. *Rodgers v. Des Moines*, 435 F.3d 904, 909 (8th Cir. 2006). The Court cannot manufacture a remedy for emotional injuries like pain and suffering which is not available under the FMLA. *See also Mann*, 891 F. Supp. at 264-65 (holding because the FMLA does not authorize recovery for emotional or non-pecuniary claims, "emotional damage" does not establish an irreparable harm). Finally, Plaintiffs have not identified a specific harm (other than essentially a "per se" violation of their FMLA rights) to the extent any Plaintiff attests they had to go to work when they otherwise would have taken FMLA leave, notwithstanding (again) other forms of leave available to them other than FMLA leave that the FMLA does not otherwise remedy.[9]

For the reasons explained above, the Court does not find Plaintiffs have adequately demonstrated irreparable harm that would entitle them to the extensive temporary emergency injunctive relief they seek in this case. Because Plaintiffs have not demonstrated irreparable harm, they are not entitled to a temporary restraining order. *See Sessler*, 990 F.3d at 1156 (failure to demonstrate irreparable harm is fatal to a movant's motion for preliminary injunctive relief).

### C. Balance of Harm and Public Interest

Because Plaintiffs fail to demonstrate an adequate irreparable harm to justify the extraordinary remedy of temporary injunctive relief in this case, the Court need not consider the

---

[9] To the extent Plaintiffs rely on *Stagliano v. Herkimer Central School District*, 151 F. Supp. 3d 264 (N.D.N.Y. 2015), the Court notes that the district court in that case found the plaintiff had adequately demonstrated irreparable harm in an FMLA lawsuit because the plaintiff demonstrated a chilling effect as to employees taking any sick leave whatsoever if immediate injunctive relief were not provided in that case. *See id.* at 272-75. As the district court's discussion of the irreparable-harm factor demonstrates, the concern in *Stagliano* was that plaintiff demonstrated other employees were chilled from taking sick leave altogether. Here, however, Plaintiffs do not contest they have other forms of leave (personal and sick leave) available to them, and Plaintiffs have not demonstrated a chilling effect as to this other leave as a factual matter.

remaining factors. *See Allied Servs., LLC v. Smash My Trash, LLC*, No. 21-cv-00249-SRB, 2021 WL 1671675, at *3-5 (W.D. Mo. April 28, 2021) (considering only the irreparable harm factor to deny preliminary injunctive relief); *Gamble v. Minn. State Indus.*, No. 16-cv-2720-JRT-KMM, 2017 WL 6611570, at *3 (D. Minn. Dec. 1, 2017) (same), *adopted by* No. 16-2720 (JRT/KMM), 2017 WL 6607396 (D. Minn. Dec. 27, 2017).

### IV. Conclusion

While Plaintiffs have demonstrated a fair chance of succeeding on the merits as to some of their claims in this FMLA class action, any such success does not overcome Plaintiffs' failure to demonstrate adequate irreparable harm to be entitled to the extraordinary relief of a temporary restraining order. Plaintiffs' motion for temporary restraining order (Doc. 3) is **DENIED**.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: July 21, 2022