IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RODERICK ROBERSON, *et al.*, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:22-cv-00358-RK |
| | ) |
| THE KANSAS CITY SOUTHERN | ) |
| RAILWAY CO., | ) |
| | ) |
| Defendant. | ) |

# **ORDER**

Before the Court is Plaintiffs' Motion to Certify Class. (Doc. 97.) This motion is fully briefed. (Docs. 98, 104, 111.) After careful consideration, and for the reasons stated below, the motion is **DENIED**.

## Background

This case arises out of Kansas City Southern Railway Co.'s ("KCS") alleged violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. Plaintiffs bring claims on behalf of a putative class of current, former, and future KCS employees working as conductors and engineers, collectively referred to as Train, Engine & Yard ("TE&Y") employees by the parties.

Plaintiffs' first claim (Count I) alleges FMLA interference based on the method KCS used to calculate TE&Y employees' available FMLA leave from September 2021 to August 2022 ("FMLA leave calculation policy"). (Doc. 1 at 33-41.) Plaintiffs allege that under this methodology, employees were told they exhausted their available FMLA leave after taking as few as twelve days of FMLA leave (far short of the twelve weeks granted by the FMLA).[1] (Doc. 98 at 1.) The FMLA leave calculation policy was imposed in response to KCS's lack of a system for tracking intermittent FMLA leave. (Doc. 99-11 at 5-6.) "Intermittent leave is FMLA leave taken in separate blocks of time due to a single qualifying reason." 29 C.F.R. § 825.202(a). This policy was used to calculate employees' FMLA leave from September 2021 to August 2022. KCS

---

[1] For a comprehensive discussion of the FMLA leave calculation policy, see Doc. 45 at 3-4. The specific details of the FMLA leave calculation policy are not relevant to the class certification motion.

discontinued the FMLA leave calculation policy in August 2022, after this litigation commenced. (Doc. 99-11 at 15-16.)

Plaintiffs' second claim (Count II)[2] alleges FMLA discrimination based on KCS's policy of moving TE&Y employees to the bottom of job boards[3] after returning from FMLA leave, rather than returning them to the position they were in at the time they took leave ("bottom-of-the-board policy"). TE&Y employees either work "on-call" or "fixed" schedules. (Doc. 31-1 ¶¶ 4, 8.) On-call TE&Y employees are either designated as "marked up" (meaning the employee is available for on-call work as needed) or "marked off" (meaning the employee is unavailable to be called for work, for reasons such as taking leave). As discovery progressed, it became clearer that this bottom-of-the-board policy varies depending on the type of board an employee is on. If an employee is on a "Drop Turn" board, they will be moved to the bottom of the board any time they mark off for FMLA leave. If an employee is on a "Non-Drop Turn" board, they will only be moved to the bottom of the board if, during their leave and before marking up, the spot they were in before taking leave gets called into work. (*See* Docs. 31-1 ¶ 14; 104-6 at 19:9-22:16.) Under each variation, an employee may be placed at the bottom of the board rather than being placed in the spot they held at the time of taking FMLA leave depending on the circumstances.

This motion for class certification comes after both class and merits discovery have concluded. Plaintiffs now ask the Court to certify the following class under Federal Rule of Civil Procedure 23:

> Current, future, and former KCS Train Engine & Yard ("TE&Y") employees who have worked enough hours to be eligible for FMLA leave who, at any time from three years preceding the Complaint's filing to the resolution of this action, took or attempted to take FMLA leave.

(Doc. 98 at 2.) Plaintiffs suggest a "hybrid" class action under Rule 23(b)(2) and 23(b)(3). They seek certification of a 23(b)(2) class to determine KCS's liability and obtain injunctive and declaratory relief from the Court. They propose a 23(b)(3) class to address the calculation and

---

[2] Plaintiffs are no longer pursuing claims relating to KCS's alleged requirement that employees mark off in 24-hour increments. (*See* Doc. 111 at 23 n.11.)

[3] On-call TE&Y employees are assigned to job boards. Boards function by placing employees on a rotating list based on when they last worked, and employees are generally called to work in that order. (Doc. 31-1 ¶¶ 4, 7.) A "pool board" is one which operates between two or more locations, one of which is the employee's home terminal. (*Id.* ¶¶ 4-5.) When called, TE&Y employees on pool boards typically operate a train from their home terminal to an away terminal and back, after a rest period. (*Id.*) There are also "extra boards" which exist to fill temporary vacancies. (*Id.* ¶ 7.)

2

award of money damages. (*Id.* at 3.) In the alternative, Plaintiffs request that the Court certify issue classes under 23(c)(4). (*Id.* at 3.) Finally, in their reply brief, Plaintiffs suggest for the first time that the Court should define subclasses if it finds the proposed class overbroad. (Doc. 111 at 5.)

## Rule 23 Standard

"In order to obtain class certification, a plaintiff has the burden of showing that the class should be certified and that the requirements of [Federal] Rule [of Civil Procedure] 23 are met." *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 477 (8th Cir. 2016). The Court "adheres to a rigorous analysis of the Rule 23 requirements, which includes that a class 'must be adequately defined and clearly ascertainable.'" *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016) (citation omitted). Ascertainability is an "implicit" Rule 23 requirement that must be considered. *McKeage v. TMBC, LLC*, 847 F.3d 992, 998 (8th Cir. 2017).

Plaintiff must also satisfy the four explicit prerequisites in Rule 23(a) and at least one of the three subsections of Rule 23(b). *Ebert*, 823 F.3d at 477. The four Rule 23(a) prerequisites are:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. Pro. 23(a)(1)-(4); *see also Ebert*, 823 F.3d at 477. A Rule 23(b)(2) class may be certified when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Ebert*, 823 F.3d at 480 (citing Fed. R. Civ. P. 23(b)(2)). "[C]ohesiveness is the touchstone of a (b)(2) class." *Id.* Alternatively, to obtain certification of a Rule 23(b)(3) class, Plaintiffs must show that common questions "predominate" over individual questions and that a class action is "superior" to other available methods of adjudication. Fed. R. Civ. P. 23(b)(3). Where a party seeks to certify a class under both Rule 23(b)(2) and Rule 23(b)(3), it must satisfy the requirements of each subsection. *See Harris v. Union Pac. R.R. Co.*, 953 F.3d 1030, 1037 (8th Cir. 2020) (finding individualized questions defeated both cohesiveness and predominance and reversing certification of 23(b)(2) and 23(b)(3) hybrid class).

3

KCS contests Plaintiff's proposed classes[4] at nearly every turn. The Court will focus on Rule 23(a)(2) commonality and class-member standing, finding these issues dispositive of the present motion for class certification.[5]

## Discussion

### I. Plaintiffs' Proposed Class Fails to Satisfy Rule 23(a)(2) Commonality

Plaintiffs' proposed class covers current, former, and future employees; fixed-schedule and on-call employees; and employees who only worked prior to the implementation of KCS's FMLA calculation policy in September 2021, as well as those who worked after it was implemented and after it was discontinued. KCS argues that this sweeping class cannot satisfy the 23(a)(2) commonality requirement. The Court agrees.

The commonality requirement is not an onerous burden, and "[e]ven a single [common] question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (citations omitted). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.' This does not mean merely that they have all suffered a violation of the same provision of law." *Id.* at 349-50 (citation omitted). Courts have frequently found the commonality requirement satisfied when plaintiffs can show a uniform and organization-wide policy applicable to *every* class member. *See, e.g.*, *Postawko v. Mo. Dep't of Corr.*, No. 2:16-cv-04219, 2017 WL 3185155, at *8 (W.D. Mo. July 26, 2017) ("[T]he unconstitutional treatment decisions alleged by Plaintiffs are attributable to an overarching policy to which all class members are exposed, satisfying the commonality requirement."), *aff'd*, 910 F.3d 1030 (8th Cir. 2018); *Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976, 983 (W.D. Mo. 2019). Courts have even found commonality satisfied when an organization-wide policy uniformly subjects members of the putative class to a "substantial risk of serious harm," even if not all class members were actually harmed. *Postawko*, 910 F.3d at 1039 (citation omitted).

---

[4] Plaintiffs propose two classes, one under Rule 23(b)(2) (seeking injunctive and declaratory relief) and one under Rule 23(b)(3) (seeking monetary damages). The Court will refer to them as a single class for simplicity for the Rule 23(a) analysis, since it pertains to both classes based on their identical language.

[5] Plaintiffs secondarily argue the Court could certify a Rule 23(b)(1) class. (Doc. 98 at 34-37.) KCS claims this Circuit has never certified an FMLA class under 23(b)(1), and this Court's independent research comports with this claim. Rule 23(b)(1) is the least used provision of Rule 23(b), typically restricted to limited fund situations and breach of ERISA fiduciary duties. *See Wildman v. Am. Century Servs., LLC*, No. 4:16-cv-00737-DGK, 2017 WL 6045487, at *6 (W.D. Mo. Dec. 6, 2017). The Court is hesitant to certify an FMLA class under this provision given its limited use generally and novelty in the FMLA context specifically.

Plaintiffs point to KCS's September 2021 FMLA leave calculation policy and bottom-of-the-board policy as questions common to the whole class. However, for the reasons explained below, Plaintiffs have failed to meet their burden to show the commonality requirement of 23(a)(2) is met in the proposed class.

### A. FMLA Leave Calculation Policy Is Not a Basis for Commonality

Plaintiffs argue that whether KCS's FMLA leave calculation policy violates the FMLA is a question common to the entire class. KCS counters that the class includes some employees who were only employed by KCS prior to September 2021 and were never subject to the FMLA leave calculation policy at issue here. (Doc. 104 at 19 (citing David Decl. ¶ 4 (dozens of employees only took FMLA leave prior to September 2021)).) Thus, KCS contends there is no FMLA claim those employees could bring against KCS based on that policy, and, therefore, a class including them cannot point to the FMLA leave calculation policy as a question common to every class member.

The cases Plaintiffs cite in support are not contrary to KCS's counterargument. These cases stand for the proposition that an organization-wide policy that applies to each member of the class may provide a basis for finding 23(a)(2) commonality, even if not all class members were necessarily harmed by that policy. In *Postawko*, the plaintiffs alleged that the Missouri Department of Corrections ("MODOC") had a "policy of withholding treatment with [direct-acting antiviral] drugs from inmates diagnosed with [chronic Hepatitis C]." *Postawko*, 2017 WL 3185155, at *3. The class as defined only included those inmates diagnosed with, or subsequently diagnosed with, that disease. *Id.* at *3. Therefore, the policy necessarily applied to the whole class, and the court found commonality satisfied. *Id.* at *7; *Postawko*, 910 F.3d at 1039 (affirming district court, finding commonality satisfied where physical symptoms of class members varied, but each was subject to a "single . . . policy or practice that creates a substantial risk of serious harm."). That is not what we have here. KCS's September 2021 FMLA leave calculation policy never applied to employees who left KCS's employment prior to its implementation; yet, these employees are swept up in a broad class which stretches back to 2019.

Plaintiffs try to save commonality by arguing that former employees might return to their positions at KCS, and thus face a "substantial risk of future harm." A relevant comparison would be if, in *Postawko*, the class included *former* MODOC inmates with chronic Hepatitis C who left MODOC's custody prior to the implementation of the policy of withholding direct-acting antiviral drugs. Plaintiffs have not cited case law to support finding commonality in this factual scenario—

5

in which a class includes members who left the organization prior to the implementation of the challenged policy—and the Court's independent analysis has not uncovered legal support. Employees who only worked for KCS prior to the FMLA leave calculation policy's implementation are not at substantial risk of serious harm merely because they might plan to return to work at KCS. This potential is highly speculative, depending not only on the employee's desire to return (something Plaintiffs have not shown for each former employee), but also on whether KCS would reemploy them. Because the employees who worked for KCS prior to September 2021 were never subject to risk from the FMLA leave calculation policy, its legality would not "resolve an issue that is central to the validity" of their FMLA claims. *Dukes*, 564 U.S. at 350. Commonality fails on this point.

     **B.**    **Bottom-of-the-Board Policy Is Not a Basis for Commonality**

Plaintiffs also point to KCS's "bottom-of-the-board" policy as a question common to the entire class. KCS counters that the bottom-of-the-board policy (1) is not a singular policy, and (2) does not apply to employees who work only fixed schedules. Thus, KCS contends there is no FMLA claim those fixed-schedule employees could bring against KCS based on that policy.

KCS's first point as to lacking a singular policy is unpersuasive. The Court recognizes that there may not be one uniform "bottom-of-the-board" policy across job boards. Non-Drop Turn boards only place an employee at the bottom of the board if they miss a trip; conversely, employees on Drop Turn boards are moved to the bottom regardless of whether they miss a trip. However, the "*risk* of substantial harm" from the possibility of being moved to the bottom of the board is present for both types of boards even though some employees working Non-Drop Turn boards will not be moved to the bottom of the board upon returning from FMLA leave.

KCS's second point as to fixed-schedule employees is more compelling. Plaintiffs concede that an employee working only a fixed schedule would not suffer harm from the bottom-of-the-board policy. (*See* Doc. 111 at 4.) Nevertheless, Plaintiffs contend that employees can and do move back and forth between fixed-schedule and on-call positions, subjecting them to a risk of harm, and that employees who only work fixed schedules will be weeded out at the damages phase. A safety mechanism on the back end cannot excuse a failure to meet Rule 23(a) requirements on the front end. KCS points to nearly 200 TE&Y employees who took FMLA leave during the class period but worked only jobs with fixed schedules. (Doc. 104-20 ¶ 7.) Since these employees did not work on any type of rotating job board, the bottom-of-the-board policy was not applicable to

6

their positions. The policy should apply across the defined class, with tailored classes meeting commonality more readily than broad classes. *See Rentschler v. Carnahan*, 160 F.R.D. 114, 115-16 (E.D. Mo. 1995) (finding commonality satisfied for a class of inmates alleging overcrowding, where that class excluded inmates in the capital punishment housing unit (which did not have the same overcrowding issue)). It is too speculative that all employees on a fixed schedule will at some point work on call; without more certainty here, the risk of substantial harm is low or nonexistent. The bottom-of-the-board policy is not a common question.

Each of the challenged policies only apply to a subset of the broad class Plaintiffs defined. Therefore, cases certifying a class based on an organization-wide policy applicable to all class members, and subjecting each to a risk of substantial harm, are inapposite. Plaintiffs have not identified any other questions common to the entire class. Therefore, the proposed class fails Rule 23(a)(2)'s commonality requirement.[6]

## II. Former Employees Lack Standing to Seek Injunctive Relief Under 23(b)(2)

Even if these scope issues did not thwart Rule 23(a)(2) commonality and 23(b)(3) predominance, Plaintiffs cannot proceed with a 23(b)(2) class which includes former employees wholesale. The Court must consider the standing of class members, and "a class cannot be certified if it contains members who lack standing." *Johannessohn v. Polaris Indus.*, 9 F.4th 981, 987 (8th Cir. 2021) (affirming denial of class certification where the class included all consumers who bought a product, but some class members had no defect in their product and thus lacked standing). Further, "plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

Generally, former employees do not have standing to request injunctive or declaratory relief against a former employer. *See Besette v. AT&T Corp.*, No. 03-cv-0830-HFS, 2006 WL 2927561, at *1 (W.D. Mo. Oct. 11, 2006) (finding moot for lack of standing a case brought by a former employee against a former employer for injunctive and declaratory relief) (citing *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002), *overruled in part on other grounds by Jones*

---

[6] For the same reasons the proposed class fails 23(a)(2) commonality, it cannot satisfy Rule 23(b)(3) predominance of common questions—a higher standard than commonality. *See Jackson v. Collections Acquisition Co., LLC*, No. 4:13-cv-00570-JAR, 2013 WL 5592603, at *3 (E.D. Mo. Oct. 9, 2013) ("The standard for certification imposed by Rule 23(b)(3) is more demanding than the commonality requirement of Rule 23(a)." (citation omitted)).

7

Case 4:22-cv-00358-RK   Document 124   Filed 10/16/24   Page 7 of 11

*v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004)); *see also Gilbert v. Donahoe*, 751 F.3d 303, 313 (5th Cir. 2014) ("As [plaintiff] is no longer an employee of [defendant], she does not realistically face a threat [defendant] will continue to violate her rights under the FMLA. Thus she does not have standing to seek an injunction."). Plaintiffs' proposed 23(b)(2) class includes not only current and future employees, but also former employees. These former employees do not have standing to seek injunctive relief because they face no realistic threat that KCS will continue to violate their FMLA rights.[7]

There may be an exception for former employees actively seeking reinstatement, *see Faibisch*, 304 F.3d at 801, but Plaintiffs have neither shown former employees seeking reinstatement, nor made this distinction in the proposed class definition. Therefore, in addition to lacking 23(a)(2) commonality, the Court cannot certify a 23(b)(2) class as proposed because Plaintiffs have failed to define a class in which all class members have standing to seek the requested injunctive relief. For the foregoing reasons, Plaintiffs have failed to show that their proposed hybrid 23(b)(2) and 23(b)(3) class satisfies Rule 23.[8]

### III. Issue Classes

Plaintiffs argue in the alternative that the Court should certify two issue classes under Rule 23(c)(4). Plaintiffs define these classes as follows:

> Issue 1: Whether KCS's methodology for calculating FMLA leave comports with the statute.
>
> Issue 2: Whether KCS's policy of failing to restore employees to their prior position on the job boards when they return from FMLA leave deprives class members of their right to "equivalent employment benefits, pay and other terms and conditions of employment," as guaranteed under the FMLA. 29 U.S.C. § 2614(a)(1).

---

[7] KCS argues other subsets of the proposed class—those who are no longer approved for FMLA leave and those who only took continuous (rather than intermittent) FMLA leave—similarly lack standing. The Court does not reach these issues in light of its finding that former employees lack standing to seek injunctive and declaratory relief.

[8] The Court does not reach the issue of whether a hybrid class could be proper in this case because the proposed class fails the initial 23(a) analysis and class-member standing. However, it notes that such hybrid classes have been disfavored in recent Eighth Circuit case law because Plaintiffs must show both cohesion under 23(b)(2) and predominance under 23(b)(3). *See, e.g.*, *Harris*, 953 F.3d at 1034, 1038-39 (reversing certification of 23(b)(2) and 23(b)(3) hybrid class with two-stage trial plan for lack of cohesion and predominance); *Ebert*, 823 F.3d at 481 (reversing certification of 23(b)(2) and 23(b)(3) hybrid class for lack of cohesion) ("The district court's narrowing and separating of the issues ultimately unravels and undoes any efficiencies gained by the class proceeding because many individual issues will require trial.").

(Doc. 98 at 51.)

The Eighth Circuit recently noted that "Rule 23(c)(4) allows a class action to be brought or maintained with respect to particular issues. Such issue classes should not be certified 'where the predominance of individual issues is such that limited class certification would do little to increase the efficiency of the litigation.'" *Ford v. TD Ameritrade Holding Corp.*, No. 22-3232, 2024 U.S. App. LEXIS 22268, at *9 (8th Cir. Sept. 3, 2024) (citing *In re St. Jude Med., Inc.*, 522 F.3d 836, 841 (8th Cir. 2008)). Issue classes "cannot be used to evade the predominance and cohesiveness requirements" of Rule 23(b)(2) and 23(b)(3). *In re NHL Players' Concussion Injury Litig.*, 327 F.R.D. 245, 266 (D. Minn. 2018). Nor can issue classes be used to evade the 23(a) requirements. *See Black v. Occidental Petrol. Corp.*, 69 F.4th 1161, 1186 (10th Cir. 2023) ("[I]ssue class certification is appropriate when the issue class itself satisfies the requirements of Rule 23(a) and the predominance and superiority requirements of Rule 23(b)(3).").

Here, Plaintiffs' issue classes fail for the same reasons their proposed hybrid class fails. An issue class cannot be sheared from its class members.[9] The class members as originally proposed fail the commonality requirement of 23(a)(2) because neither issue proposed applies to every class member. Courts have started to certify issue classes to litigate common issues of liability, to be followed by individual trials on questions such as proximate causation and damages. *See Black*, 69 F.4th at 1190 ("[I]t was not clear error in judgment for the district court to conclude that it would advance judicial economy, and resolution of the dispute, to permit class-wide resolution of liability before determining individual class members' damages."). Unlike the growing number of cases certifying issue classes on common liability questions, here there is still no common issue of liability as to the whole class. Therefore, an issue class is unsupported.

### IV. Subclasses

Finally, Plaintiffs argue—for the first time in their reply—that KCS's arguments against certification can be solved by the creation of subclasses. (Doc. 111 at 4-5.) The District Court may, but is not required to, define and certify subclasses *sua sponte*. *See U.S. Parole Comm'n v.*

---

[9] Issue classes seek to certify a particular issue, which applies to a defined class of people, for class-wide resolution. *See, e.g.*, *In re NHL Players' Concussion Injury Litig.*, 327 F.R.D. at 255 (attempting to certify two particular issues for "Class 2: All Retired NHL Hockey Players . . . who have been clinically diagnosed with NDDC."). Plaintiffs suggest two issue classes in the abstract, without reference to the class of people to whom the resolution of the issues would apply. The Court therefore assumes that the relevant class of people is the group defined in the originally proposed class. (Doc. 98 at 2.)

9

*Geraghty*, 445 U.S. 388, 408 (1980). Ultimately, it is the party seeking class certification, "not the District Court[, who] . . . bear[s] the burden of constructing subclasses" and proving that each subclass meets the requirements of Rule 23. *Id.* Here, Plaintiffs began the job, but fell short of their burden. Plaintiffs define a single subclass and suggest that three more could be similarly defined by the Court to overcome KCS's overbreadth arguments. (Doc. 111 at 5.)

The Court is hesitant to *sua sponte* define subclasses. First, Plaintiffs only defined one of four potential subclasses necessary to address the overbreadth arguments. Second, Plaintiffs do not suggest which named Plaintiffs would serve as class representatives for each of these subclasses. *See Ramthun v. Bryan Career Coll., Inc.*, 93 F. Supp. 3d 1011, 1022 (W.D. Ark. 2015) ("Because the Rule 23(a) requirements must be satisfied for each subclass, each subclass must have an adequate representative."). Further, while no meaningful objection to numerosity was made in the initial class certification briefing, the Court is unable to readily identify how many employees would be in each of the subclasses. The Court, therefore, cannot conduct the rigorous Rule 23 analysis required. Finally, many of the parties' arguments, particularly pertaining to 23(b)(2) cohesiveness and 23(b)(3) predominance, would be applicable to any potential subclasses Plaintiffs could form.[10] In light of the persuasive arguments regarding lack of cohesion and predominance,[11] efforts by the Court to define subclasses *sua sponte* that satisfy Rule 23 would be futile.

---

[10] A great many more of the arguments focus only on the broad proposed class. Since Plaintiffs, in their reply, propose subclasses for the first time, KCS was unable to brief and contest the formation of subclasses in its response.

[11] For example, for the only proposed subclass Plaintiffs provided—a Rule 23(b)(3) subclass limited to the time period during which the FMLA leave calculation policy was in effect—the Court is concerned with the need for both individualized showings of prejudice or harm under the FMLA and individualized proof of damages stemming from the policy. The Eighth Circuit has affirmed summary judgment against FMLA interference plaintiffs where they fail to show actual prejudice or harm, indicating it is a prerequisite to finding liability. *See, e.g.*, *Rodgers v. City of Des Moines*, 435 F.3d 905, 909 (8th Cir. 2006) (affirming summary judgment) ("The FMLA, however, 'provides no relief unless the employee has been prejudiced by the violation.'" (citation omitted)); *Brandt v. City of Cedar Falls*, 37 F.4th 470, 479 (8th Cir. 2022) (affirming summary judgment on FMLA interference claim where plaintiff "failed to demonstrate that she sustained any recoverable damages"). This potentially individualized question of liability, when combined with the need for individual damage calculations, (*see* Doc. 98 at 49), calls into question predominance of common issues.

Plaintiffs have not met their affirmative "burden of showing that the class [or subclasses] should be certified and that the requirements of Rule 23 are met." *Ebert*, 823 F.3d at 477. After a rigorous analysis, the Court finds that the proposed class fails to satisfy Rule 23.

## Conclusion

Accordingly, after careful consideration and for the reasons explained above, the Court **ORDERS** that Plaintiffs' motion for class certification (Doc. 97) is **DENIED**.

**IT IS SO ORDERED.**

                                                      s/ Roseann A. Ketchmark
                                                      ROSEANN A. KETCHMARK, JUDGE
                                                      UNITED STATES DISTRICT COURT

DATED: October 16, 2024