IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RODERICK ROBERSON, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 4:22-cv-00358-RK |
| | ) |
| THE KANSAS CITY SOUTHERN | ) |
| RAILWAY CO., | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is Defendant Kansas City Southern Railway Co.'s ("KCS") motion in limine to exclude Plaintiffs' expert opinion testimony of economist Andrew Schwarz. (Doc. 116.) This motion is fully briefed. (Docs. 117, 120, 123.) After careful consideration, and for the reasons stated below, the motion is **DENIED**.

## Background

This case arises out of KCS's alleged violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* Plaintiffs are a group of current and former KCS employees working as conductors and engineers, collectively referred to as Train, Engine & Yard ("TE&Y") employees by the parties. Relevant to the current motion to exclude Mr. Schwarz's expert testimony, Plaintiffs allege an FMLA discrimination claim based on KCS's practice of placing on-call employees at the bottom of job boards (i.e., at the bottom of the list to be called to work) after returning from FMLA leave. (*See* Doc. 1 at 41-44.)

TE&Y employees who work on-call schedules may be assigned to one of a few types of job boards. The basic functioning of the board types is the same: TE&Y employees assigned to a board are placed on a rotating list based on when they last worked and are generally called to work in that order. (Doc. 31-1 ¶¶ 4, 7.) A "pool board" is one which operates between two or more locations, one of which is the employee's home terminal. (*Id.* ¶¶ 4-5.) When called, TE&Y employees on pool boards typically operate a train from their home terminal to an away terminal and back, after a rest period. (*Id.*) There are also "extra boards" which exist to fill temporary vacancies. (*Id.* ¶ 7.)

Boards also differ on another axis—"Non-Drop Turn" boards versus "Drop Turn" boards. On-call TE&Y employees are either designated as "marked up" (meaning the employee is available for on-call work as needed) or "marked off" (meaning the employee is unavailable to be called for work, for reasons such as taking leave). The effect of marking off depends on the type of board. For Non-Drop Turn boards, the employees retain their spot and continue to move up the board when they mark off for any reason. (*Id.* ¶ 14.) If the employee marks up from leave before they rise to the top of the board, their spot is the same as it would have been without taking leave. (*Id.*) If, however, their turn is called while they are still marked off, one of two scenarios could occur. First, if the employee's "turn" is already back at the home terminal by the time the employee marks up (i.e. the employee who took their spot operated a train from the home terminal to the away terminal, and back again), the employee rejoins the board at whatever spot their turn happens to be in at that time. (Doc. 104-6 at 19:9-22:16.) Second, if the employee's "turn" is not yet back at the home terminal, the employee is placed on "OK Hole Status"[1] and remains there until their turn returns to the home terminal, at which point they are placed at the bottom of the board. (Doc. 31-1 ¶ 13-14.) Employees working on "Drop Turn" boards are placed at the bottom of the board upon returning from leave, whether or not they missed a trip.

Plaintiffs allege that these policies, which they collectively refer to as the "bottom-of-the-board" policy, violate the FMLA because they reduce the hours of work—and thus the ultimate take-home pay—of TE&Y employees who take FMLA leave. Plaintiffs retained Mr. Schwarz, an economist, to provide expert testimony as to a class-wide, formulaic methodology to assess the damages arising from the bottom-of-the-board policy. At the core of Mr. Schwarz's expert testimony is the assumption that, by being placed at the bottom of a job board upon returning from FMLA leave, TE&Y employees are harmed because of the additional waiting time before being called to a job. Mr. Schwarz identifies two ways waiting-time damages present themselves: Mr. Schwarz calls damages arising from the time an employee spends waiting on a board prior to taking leave, and losing the spot gained by that waiting, "Lost Priority Damages." (Doc. 117-4 ¶ 11.) He refers to damages arising from an employee being placed on OK Hole Status, even after being marked up, as "Off-the-Board Damages." (*Id.*) Mr. Schwarz's methodology attempts to capture

---

[1] When a TE&Y employee is on OK Hole Status, they are not on a job board, and they do not gain positions toward being called to work. They remain on OK Hole Status until the crew that filled in for their missed trip returns to the home terminal. It is possible to be called to work directly from OK Hole Status in the event that the extra boards have been exhausted. (*See* Doc. 104-7 at 1-2.)
2

Case 4:22-cv-00358-RK   Document 125   Filed 10/16/24   Page 2 of 13

both types of damages in a series of equations. First, Mr. Schwarz calculates the expected value of a timeslot[2] spent marked up on a job board:[3]

> **Expected value of marked-up timeslot = [employee's total earnings] / [total timeslots marked up or working]**

(Doc. 117-2 ¶ 49.)

So, for example, an employee with total earnings of $100,000, and who spent 1,000 timeslots marked up or working, would have expected earnings of $100 per timeslot ($100,000/1,000 = $100). Then, Mr. Schwarz calculates the damages:

> **Damages = [timeslots employee was denied the benefit of being marked up] x [expected value of marked-up timeslot]**

(*Id.* ¶ 54.)

Continuing from the example above, if our employee with expected earnings of $100 per timeslot spent four timeslots marked up, and then marked off for FMLA leave and went to the bottom of the board upon marking up, the employee's damages under Mr. Schwarz's model would be $400 (4 x $100 = $400). Mr. Schwarz takes an "ex ante" approach to this calculation, meaning that when determining the timeslots an employee was denied the benefit of being marked up, he looks to the amount of time an employee spent marked up *before* taking FMLA leave and being returned to the bottom of the board. An alternative method would be calculating this number "ex post," meaning counting the number of timeslots it takes *after* the employee marked up again to return to the spot the employee was in before marking off. (*Id.* ¶¶ 14-15.)

Plaintiffs seek class certification in this action. (Doc. 97.) In doing so, they cite Mr. Schwarz's expert testimony as support for the existence of a class-wide, formulaic methodology to assess damages arising from the Defendant's "bottom-of-the-board" policy. Further facts are set forth as necessary below.

---

[2] References to a "timeslot" refer to a two-hour timeslot. Mr. Schwarz uses this terminology, and the two-hour timeslot is based on the standard period of time recorded in KCS's data.

[3] The Court simplifies Mr. Schwarz's equations (and variables) for simplicity. In more detail, Mr. Schwarz's model calculates the "expected earnings per marked-up timeslot on that job board, based on that worker's own history of having been paid after being marked up as available for jobs where no FMLA-related interruptions occurred." (Doc. 117-4 ¶ 82.)

**Legal Standard**

Federal Rule of Evidence 702, amended following *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and most recently in 2023, provides the standard for the admission of expert testimony:[4]

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Based on Rule 702, the Eighth Circuit gives a three-part test to determine the admissibility of expert testimony:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

*Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (internal quotations and citations omitted). "The proponent of the expert testimony bears the burden to prove its admissibility." *Menz v. New Holland N. Am., Inc.*, 507 F.3d 1107, 1114 (8th Cir. 2007) (citing *Lauzon*, 270 F.3d at 686). The rules for the admissibility of expert testimony favor admission over exclusion. *Lauzon*, 270 F.3d at 686.

Expert testimony regarding the calculation of damages can be useful to the factfinder, and even necessary to prove a plaintiff's case, when damages calculations are not straightforward. *See Petrone v. Werner Enters.*, 42 F.4th 962, 969 (8th Cir. 2022) ("The district court did not err in concluding that, without expert testimony, Plaintiffs would be unable to prove damages," where the "evidence was not of the type to which the jury could simply apply basic math principles."). "While other methods for calculating damages may be available, so long as the methods employed

---

[4] Rule 702 was amended to directly state that the proponent of the expert testimony must establish these reliability requirements by a preponderance of the evidence, a principle already established in our case law. *See Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757-58 (8th Cir. 2006) ("[T]he proponent of the expert testimony must show by a preponderance of the evidence" that the expert's opinion is reliable.).

are scientifically valid, . . . mere disagreement with the assumptions and methodology used does not warrant exclusion of expert testimony." *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007) (quoting *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.")). "If the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 804 (7th Cir. 2012) (citing *Daubert*, 509 U.S. at 596).

## Discussion

KCS moves to exclude Mr. Schwarz's testimony on the bases that it is legally irrelevant and unreliable. Plaintiffs argue that Mr. Schwarz's testimony satisfies Rule 702 for the admission of expert evidence and that KCS's arguments go to the weight of the evidence, a question reserved to the jury, rather than the admissibility of the evidence. Plaintiffs also contend that the class-certification stage is not the proper time for resolution of the admissibility of expert testimony.

### I. Timing

In opposing KCS's motion, Plaintiffs assert that a full *Daubert* inquiry is not appropriate at the class-certification stage. (Doc. 120 at 13.) The Court finds this argument unpersuasive for two reasons: First, nothing in the relevant legal precedent precludes the Court from making a *Daubert* determination at this stage. Second, the admissibility of Mr. Schwarz's expert testimony is relevant to Plaintiffs' pending Motion to Certify Class. (*See* Docs. 97; 98 at 15.)

Plaintiffs cite *In re Zurn Plumbing Products Liability Litigation*, 644 F.3d 604 (8th Cir. 2011), for the proposition that the Eighth Circuit disfavors resolution of *Daubert* motions at the class-certification stage. In *Zurn*, the Eighth Circuit upheld the district court's "focused *Daubert* analysis" at the class-certification stage in lieu of a full-scale analysis. *Id.* at 614. However, in *Zurn*, the district court adopted a bifurcated discovery plan, and at the time of the *Daubert* motion, only class discovery (not merits discovery) had been completed. *Id.* at 609, 612 ("[B]ifurcated discovery . . . resulted in a limited record at the class certification stage, preventing the kind of full and conclusive *Daubert* inquiry [defendant] later requested."). Similarly, in *Cody v. City of St. Louis*, 104 F.4th 523 (8th Cir. 2024), though the Eighth Circuit boldly stated that "[t]he ultimate *admissibility* of an expert's opinion is therefore a red herring at the class-certification stage," the court's underlying reasoning centered on the fact that class-certification decisions are generally

made before the close of merits discovery. *Id.* at 535. Here, the Court rejected KCS's proposal to proceed with bifurcated discovery. (Doc. 57 at 3.) Class and merits discovery occurred simultaneously and are now closed. Therefore, the evidentiary uncertainty from *Zurn* and *Cody* is not at issue here, and the Court sees no reason to delay a ruling.

Nor does *Blades v. Monsanto Co.*, 400 F.3d 562 (8th Cir. 2005), foreclose consideration of admissibility of expert testimony at the class-certification stage in this case. The "decision in *Blades* addressed the scope of the district court's fact finding with respect to conflicting expert testimony, not whether the testimony should have been admitted in the first place." *In re Zurn*, 644 F.3d at 627. While the parties' expert testimony is certain to conflict, that is not at issue now. What is at issue is whether Plaintiffs' expert testimony is admissible at all. The relevant precedent does not preclude the Court from ruling on KCS's motion at this stage.

Further, the admissibility of Mr. Schwarz's expert opinion is relevant to the pending motion for class certification. In their class certification briefing, Plaintiffs point to Mr. Schwarz's testimony as evidence that there is a "class-wide, formulaic methodology to assess the damages each Class member suffered" in relation to their bottom-of-the-board claim. (Doc. 98 at 15.) Before a court may certify a Rule 23(b)(3) "damages class," the plaintiff must show that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Whether Plaintiffs can show a class-wide methodology for calculating damages is at least relevant to whether common questions predominate and whether a class action is superior.

## II. Relevancy

KCS first argues that Mr. Schwarz's expert testimony is not legally relevant because it does not calculate a type of damages recognized by the FMLA. Under the FMLA, an employee—upon proving a violation—may recover "damages equal to the amount of any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation." 29 U.S.C. § 2617(a)(1)(A)(i)(I). The first part of the Eighth Circuit's test for admissibility of expert testimony is "the basic rule of relevancy." *Lauzon*, 270 F.3d at 686. Under Federal Rule of Evidence 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action."

6

KCS's argument proceeds in the following way: (1) Mr. Schwarz's method measures the economic value of time spent marked up, and he concludes that damages equal this value times the number of timeslots an employee was denied the benefit of being marked up by KCS's "bottom-of-the-board" and "OK Hole" policies. (2) This measurement of damages is not a measurement of lost wages or any other type of damages recognized by the FMLA. (3) Evidence regarding a type of damages the FMLA does not recognize cannot make any fact at issue in the case more or less probable. (4) Therefore, Mr. Schwarz's testimony is irrelevant. In other words, since the method is not aimed at the correct output of damages, it is irrelevant.

The Court disagrees with KCS's premise that Mr. Schwarz's method does not measure a type of damages recoverable under the FMLA. In support of its position, KCS cites opinions denying plaintiffs various forms of monetary damages as unrecoverable under the FMLA. *See Rodgers v. City of Des Moines*, 435 F.3d 904 (8th Cir. 2006); *Walker v. United Postal Serv., Inc.*, 240 F.3d 1268 (10th Cir. 2001). These cases are readily distinguishable. In *Rodgers*, the plaintiff attempted to recover emotional distress damages, which are clearly not contemplated by the text of the statute. *Rodgers*, 435 F.3d at 909. Similarly, in *Walker*, the plaintiff sought nominal damages after conceding that she suffered no actual monetary damages from her employer's FMLA violation. *Walker*, 240 F.3d at 1277. These cases were decided in the wake of *Nevada Department of Human Resources v. Hibbs*, 538 U.S. 721 (2003), in which the Supreme Court noted that "[t]he cause of action under the FMLA is a restricted one: The damages recoverable are strictly defined and measured by actual monetary losses." *Id.* at 740.

The cases above deny plaintiffs a type of damages the FMLA bars wholesale. But Mr. Schwarz does not calculate emotional distress damages, and Plaintiffs are not seeking nominal damages. Plaintiffs claim actual monetary loss in the form of lost pay as a result of the alleged FMLA discrimination. Mr. Schwarz has attempted to articulate a method to capture the actual monetary damage employees suffered as a result of KCS's "bottom-of-the-board" policy. Mr. Schwarz calculates "the *expected earnings* per marked-up timeslot." (Doc. 117-4 ¶ 82 (emphasis added).) Then he multiplies this number by the "number of timeslots each Class member was denied the benefit of being marked up." (*Id.*) The result is one potential calculation for earnings expected, but not received.[5] In other words, lost wages, or at least a reasonable proxy for them.

---

[5] KCS points to Mr. Schwarz's deposition as proof that he was not calculating what a putative class member would have made "but for" KCS's allegedly unlawful policies, stating he denied this in his

KCS argues that the measure of damages must be the exact "pay that the employee would have received but for the challenged policy." (Doc. 117 at 1.) Admittedly, Mr. Schwarz does not calculate the exact difference between any particular employee's pay and what they would have received had they not been moved to the bottom of the board upon returning from FMLA leave. However, his method, which considers time marked up, time worked, and take-home pay, arguably makes more or less probable Plaintiffs' allegations of lost wages. It is therefore sufficiently relevant. Plaintiffs rely on principles from other employment discrimination cases to argue that proving damages does not require "unrealistic exactitude." *See Wells v. Meyer's Bakery*, 561 F.2d 1268, 1273 (8th Cir. 1977) ("[A]mbiguities in what an employee or group of employees would have earned but for discrimination should be resolved against the discriminating employer.") (Title VII). While not directly applicable in the FMLA discrimination context, the Court is nevertheless persuaded by the employment discrimination cases Plaintiffs cite. When an employer discriminates against its employees or interferes with an entitlement of employment "back pay should be awarded even where the precise amount of the award cannot be determined." *Folz v. Marriott Corp.*, 594 F. Supp. 1007, 1017 (W.D. Mo. 1984) (awarding backpay for ERISA violation). The Court does not relieve Plaintiffs of their burden to prove damages. However, Mr. Schwarz's method provides insight into the damages calculation by serving as a proxy for a highly difficult, if not impossible, calculation of exact wages lost as a result of the FMLA discrimination allegation.

Ultimately, Mr. Schwarz has provided a method with relevant insight to the question of damages. Whether his method *accurately* captures the wages employees lost because of the alleged FMLA violations is a question of fact for the jury at the damages stage. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *see also Lapsley*, 689 F.3d at 804 ("[T]he accuracy of the actual evidence

---

deposition. (Doc. 117 at 8.) However, a closer reading of the deposition transcript shows that he actually testified that he was measuring what an employee "would have been expected to" earn but for the allegedly unlawful practices. (117-5 at 32:12-20.) This is a slight modification from the question asked, which only asked if he calculated what an employee "would have" earned. (*Id.* at 32:14.) Mr. Schwarz made the modification to the question in his answer because the waiting occurred prior to the bad act and its subsequent ramifications, and any earnings at that time were thus prospective. (*Id.* at 32:18-20.) It nevertheless seems Mr. Schwarz was attempting to calculate but-for damages.

is to be tested before the jury."). Since the Court finds Mr. Schwarz's testimony sufficiently relevant, it proceeds to considering its reliability.

### III. Reliability

Second, KCS argues that even if Mr. Schwarz's expert testimony calculates the proper damages, and is thus relevant, it is nevertheless an unreliable application of the principles he relies on to the facts of the case. The Eighth Circuit's third prong of its three-part test for admissibility of expert testimony is that it must be "reliable and trustworthy."[6] *Lauzon*, 270 F.3d at 686. This prong incorporates Rule 702's factors regarding admissibility of expert testimony including that "(b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702.

At the outset, the Court notes that Mr. Schwarz's opinion reflects sufficiently reliable economic methodology, and he cites accepted economic literature in coming to his conclusions. His expected-value formula (for a timeslot) is based on the standard economic definition of expected value.[7] His ultimate method is an ex ante approach[8] to damages calculation, which is a well-established calculation in economic literature.[9]

KCS asserts Mr. Schwarz does not reliably apply the ex ante principles he relies on to the facts of the case. KCS's argument is premised on alleging that (1) Mr. Schwarz relies on incorrect

---

[6] The Eighth Circuit's second prong of the three-part test interpreting the *Daubert* factors, that the expert be qualified, is not clearly contested. To the extent that it is, the Court finds that Mr. Schwarz is a highly qualified economist, has published consistently in the field, and is qualified to make such damages calculations based on economic theory.

[7] Mr. Schwarz cites the following sources: R.J. Larsen & M.L. Marx, *An Introduction to Mathematical Statistics and Its Applications* 154 (2d ed. 1985); A.H. Studenmund & B.K. Johnson, *Using Econometrics* 9-11 (7th ed. 2017). (Doc. 117-2 ¶ 49 n.22.)

[8] When using an ex ante approach, the calculation uses "information known or knowable at the date of the unlawful act[, and] ignore[s] subsequent events." (Doc. 117-4 ¶ 15.) Compare this with an ex post approach, which uses "all available information." (*Id.*)

[9] Mr. Schwarz cites the following sources: Michael K. Dunbar et al., *Ex Ante Versus Ex Post Damages Calculations*, in Litigation Services Handbook – The Role of the Financial Expert (5th ed. 2012); Franklin Fisher, *Discussion: Janis Joplin's Yearbook and the Theory of Damages*, 5 J. Acct., Auditing & Fin. 145 (1990), https://web.mit.edu/ffisher/www/janis.pdf [https://perma.cc/JE9H-NAWB]. (Doc. 117-4 ¶¶ 15, 22 n.9.)

factual assumptions,[10] and (2) he does not consider clearly known or knowable later circumstances apparent in the facts of the case in his model, as is required by an ex ante approach.

As to the first point, the Court is unconvinced. The Eighth Circuit has stated

> As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination. Only if an expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded.

*Hose v. Chicago Nw. Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995) (quotation marks and citations omitted).

KCS disagrees with the following factual assumptions Mr. Schwarz makes: (1) losing priority leads to longer waits for work, (2) time spent on OK Hole Status leads to longer waits for work, and (3) longer waits for work lead to reduced compensation. In doing so, KCS's expert, Dr. David, points out certain scenarios in which those factual assumptions do not hold true. However, there is also evidence in the record supporting those assumptions. The Court finds that Mr. Schwarz's discussion of Plaintiff Scott Carter's experience shows that employees returned to the bottom of the board may face longer waits for work, and that these longer waits may even compound into the future. (Doc. 117-4 ¶ 30 n.15.) Mr. Schwarz identified 103 leaves after which an employee marked up, was held on OK Hole Status instead of being put on a board, and was eventually returned to a board at a lower level of priority than when they took leave. (Doc. 117-2 ¶ 31.) This sufficiently supports an assumption that being placed on OK Hole Status leads to longer waits for work. The final assumption is supported by an exercise in common sense. The record shows that an employee's take-home pay ultimately depends on "[h]ow many calls to work they have." (Doc. 99-9 at 39:22-23.) Further, "the time spent waiting and the time spent working exhibit a .74 correlation." (Doc. 117-4 ¶ 68 n.29.) If it takes longer for an employee to be called into work, then an employee may be called to work less times over any given period of time, resulting in a decrease in pay.

---

[10] KCS states that the primary issue with Mr. Schwarz's testimony is its relevancy. (*See* Doc. 123 at 10 ("This is not a dispute, for example, over the assumptions made by Schwarz or the adequacy . . . of the factual basis for his opinions.").) Having concluded that the testimony is sufficiently relevant, the Court turns to KCS's secondary argument that Mr. Schwarz's opinion is not reliable. In doing so, it considers the factual assumptions KCS contests (despite KCS stating that they were not in issue at this stage) for completeness of analysis.

Since the expert testimony is not "so fundamentally unsupported" by its factual assumptions, the Court will not exclude it on that basis. *Hose*, 70 F.3d at 974. "Defendants will have ample opportunity at trial to challenge [the expert's] opinions and the factual bases upon which they rest." *A.H. v. St. Louis Cnty.*, No. 4:14-cv-2069, 2016 WL 4269548, at *4 (E.D. Mo. Aug. 15, 2016); *see also Thurman v. Mo. Gas Energy*, 107 F. Supp. 2d 1046, 1053 (W.D. Mo. 2000) ("[T]hese are expert opinions based upon different factual assumptions. The outcome should be determined by the jury on the basis of credibility versus reliability."); *Smith & Nephew, Inc. v. Toler*, No. 4:06CV464 RWS, 2008 U.S. Dist. LEXIS 112133, at *4 (E.D. Mo. Mar. 14, 2008) (denying motion to exclude expert testimony where the motion was "directed to the factual assumptions" made by the expert, "which is an issue of credibility not of admissibility.").

As to the second point, KCS claims Mr. Schwarz does not reliably apply the ex ante approach because he does not consider certain events knowable at the time of the injury. As a starting matter, the Court notes that Mr. Schwarz accounts for a number of knowable events— including that some employees will receive minimum compensation regardless of taking leave. (Doc. 117-4 ¶¶ 71-72.) KCS also claims Mr. Schwarz's model does not account for an employee who, after taking FMLA and marking back up, knows at the time they are marking up that they will take FMLA leave again prior to being called to work. However, the Court additionally notes that Mr. Schwarz believes his "model appropriately handles the various circumstances under which an employee returned from FMLA leave and then took another leave before working a job." (Doc. 117-4 at 21.) Mr. Schwarz provides three examples, only one of which he attributes harm to the employee upon taking FMLA leave, marking up, and going back on FMLA leave prior to working a job (this is the case where the employee is returned to the board at a lower spot each time they return from FMLA leave). (Doc. 117-4 ¶¶ 61-65.) Mr. Schwarz properly accounts for this "knowable" event in his ex ante method.

The Court construes KCS's true challenge as to the method itself. In other words, it seems KCS believes no harm accrues from the wait time between the first and second leave, even if the employee loses spots upon returning from leave both times, because the employee did not expect to work in the time between the first and second leave. However, the Court acknowledges Mr. Schwarz's point that if an employee loses their spot on the job board both times, this would put the employee further away from work after each leave (a sort of compounding effect). This then correlates to a longer wait for work and less take-home pay than if the employee had taken only

one leave. Although KCS disagrees with how (or by what method) Mr. Schwarz accounts for the employee who takes another leave before being called to work, the Court finds Mr. Schwarz's methodology sufficiently accounts for this occurrence. "While other methods for calculating damages may be available, so long as the methods employed are scientifically valid, . . . mere disagreement with the assumptions and methodology used does not warrant exclusion of expert testimony." *Synergetics, Inc.*, 477 F.3d at 956.

The Court also finds Mr. Schwarz's opinion is based on sufficient data. Mr. Schwarz's opinion reflects and relies on the best data available to him—KCS's own records of employees' time spent marked up, time spent working, and ultimate take-home pay. His model accounts for both Drop Turn and Non-Drop Turn boards. (Doc. 117-2 ¶ 6 nn.7-8.) He considers time spent on OK Hole Status. (Doc. 117-2 ¶¶ 18-19.) At the suggestion of KCS's expert, Mr. Schwarz excludes from his calculations entries coded for minimum guaranteed payment. (Doc. 117-4 ¶¶ 71-72.) He also excludes non-job board related pay (such as vacation and grievance pay). (Doc. 117-4 ¶ 73.) This is sufficient data to support an economic analysis of the type Mr. Schwarz engaged in.

The proponent of the expert must demonstrate by a preponderance of the evidence that the "expert's opinion is reliable. Courts generally support 'an attempt to liberalize the rules governing the admission of expert testimony,' and favor admissibility over exclusion." *Cole v. Ecolab, Inc.*, No. 20-cv-0892 (SRN/ECW), 2023 WL 2609343, at *2 (D. Minn. Mar. 23, 2023) (citing *Lauzon*, 270 F.3d at 686). Ultimately, the Court is convinced that Mr. Schwarz's testimony is relevant and reliable to the degree necessary under Rule 702. It is sufficiently relevant because it purports to calculate, at the very least, an informative proxy for lost wages based on the best data available—employees' time spent marked up, time spent working, their ultimate take-home pay, and the relationship between these factors. It is sufficiently reliable because Mr. Schwarz uses a method of calculating damages accepted in the field of economics and applies the method properly to the case and to his expert opinion. What remains at issue are contentions over the accuracy of the factual assumptions underlying his method. Since the Court finds support for these assumptions, Dr. Schwarz's testimony satisfies Rule 702.

## Conclusion

Accordingly, after careful consideration and for the reasons explained above, the Court **ORDERS** that KCS's motion in limine to exclude Plaintiffs' expert opinion testimony of economist Andrew Schwarz, (Doc. 116), is **DENIED**.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark  
ROSEANN A. KETCHMARK, JUDGE  
UNITED STATES DISTRICT COURT

DATED: October 16, 2024